UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTON L. STINSON,

        Plaintiff,

    v.

CITY OF CHICAGO, et al.,

        Defendants.

No. 21 CV 3347

Judge Georgia N. Alexakis

MEMORANDUM OPINION AND ORDER

On July 9, 2019, Chicago Police Department officers encountered plaintiff Anton L. Stinson outside a Chicago home while responding to a call. After Stinson fled and a gun was discovered in the house's yard, he was arrested, charged with an Illinois firearm crime, and detained. The now-acquitted Stinson, in his third amended complaint, alleges that the police officers who arrested him violated the federal constitution, *see* 42 U.S.C. § 1983, as well as state law by conspiring to subject him to unlawful detention, maliciously prosecuting him, and failing to intervene to prevent these constitutional harms. He also seeks indemnity against the City of Chicago. The City and defendant police officers ("defendants") move to dismiss for failure to state a claim. [95]. Because Stinson has sufficiently pleaded his claims, that motion is denied.

## I.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative

level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor (as the Court does in the section that follows), but a court need not accept legal conclusions or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Facts

On July 9, 2019, at least two unnamed Chicago police officers responded to a call at a house in Chicago's West Roseland neighborhood. [92] ¶¶ 7, 13. There, those officers encountered Stinson, who raised his hands above his head and walked away from the officers through the house's backyard gate. *Id.* ¶¶ 8–9. At some point after Stinson saw these first officers, defendant officers Adam Altenbach, Patrick Soraghan, and Jorie Helstern-Wood arrived at the house in an unmarked car. *Id.* ¶ 10. Soraghan and Helstern-Wood exited the car and went through the same backyard gate Stinson had used. *Id.* ¶ 10.

When the gate closed behind Soraghan and Helstern-Wood, it made a loud noise. *Id.* ¶ 11. Stinson looked towards the noise and saw Helstern-Wood "in street clothes" with her firearm drawn. *Id.* ¶¶ 11–12. Because Stinson was not aware that Helstern-Wood was a police officer, he reacted to the sight of the gun by fleeing. *Id.* ¶¶ 12–14. Stinson jumped over a fence and ran through an alley, eventually encountering other police officers, including Altenbach. *Id.* ¶¶ 12–15. Altenbach grabbed Stinson by the throat, and he and other officers struck Stinson and threw him to the ground as they arrested him. *Id.* ¶¶ 16–17.

2

Meanwhile, Helstern-Wood found a handgun under the lid of a small grill in the backyard of the house where she had encountered Stinson. *Id.* ¶ 18. When police later tested the handgun, no DNA or fingerprint evidence connected Stinson to the firearm. *Id.* ¶¶ 20–22, 30.

Stinson's arrest report, affirmed under penalty of perjury by Altenbach, stated that the arresting officers saw Stinson look in their direction and walk away rapidly holding his waistband. *Id.* ¶ 23. During grand jury testimony on July 26, 2019, Altenbach further testified that officers saw Stinson walking "at a fast pace while holding his waistband" and crouching near the grill where the handgun was recovered. *Id.* ¶ 24.

Stinson denies walking at a fast pace, holding his waistband, or crouching by the grill during his encounter with police. *Id.* ¶¶ 25–28. He denies possessing a gun at all on July 9, 2019. *Id.* ¶ 34. Stinson further alleges that the statements in the arrest report and Altenbach's grand jury testimony were false and the result of discussions by Altenbach and other officers to justify Stinson's arrest, detention, and prosecution retroactively. *Id.* ¶¶ 29–34.

At some point, Stinson was charged with violating Illinois law by possessing the handgun discovered by Helstern-Wood, *id.* ¶¶ 19, 35, but he was acquitted at a bench trial in December 2021, *id.* ¶¶ 36–37. Between his arrest and his acquittal, Stinson spent nearly 23 months in custody. *Id.* ¶ 38.

### III. Analysis

In his third amended complaint, Stinson brings federal constitutional claims of unlawful detention, malicious prosecution, failure to intervene, and civil conspiracy, as well as state-law claims of malicious prosecution, civil conspiracy, and indemnification. [92] ¶¶ 39–65. Defendants seek to dismiss the complaint in its entirety. [95].

Two initial matters. First, defendants encourage the Court to consider videos from the body-worn cameras of officers present during Stinson's arrest, which defendants argue provide compelling evidence that probable cause existed to both arrest and prosecute Stinson. [95] at 3–5. Videos can be considered at a motion to dismiss if they are both referenced in the pleading and are central to the claim. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (body-worn camera video referenced in complaint considered at dismissal). But while Stinson's second amended complaint referenced the body-worn camera videos, [77] ¶¶ 11, 24, his third amended complaint—the operative complaint at this point in the litigation—does not. It is well-established that an amended complaint supersedes all previous complaints and "wipes away prior pleadings." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (cleaned up). The contents of Stinson's prior pleadings are thus irrelevant to defendants' motion, and the Court will not consider video evidence in resolving defendants' motion.

Second, defendants argue that because Stinson does not identify the specific role played by each individual defendant in his claims, his complaint engages in

improper "group pleading" and violates Federal Rule of Civil Procedure 8 by providing insufficient notice to the individual officers. [95] at 18. But, as defendants concede, group pleading does not automatically violate Rule 8, *id.*, and the Seventh Circuit has said that even an "initial inability to identify the injurers is not by itself a proper ground for the dismissal of the suit" at this phase. *See Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 789 (7th Cir. 1995) (when "the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery"); *Rodriguez v. Plymouth Ambul. Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (pro se § 1983 complaint adequate at screening even though some defendants unnamed).

Stinson has identified the specific injuries he suffered and has named a discrete group of individual police officers he believes participated in those injuries. That is sufficient under Rule 8, which requires only that Stinson give defendants fair notice of his claims. *Twombly*, 550 U.S. at 555.

### A.  Unlawful Detention (Count II)

The Fourth Amendment prohibits detention without probable cause. *See Manuel v. Joliet,* 580 U.S. 357, 367 (2017). Defendants assert that probable cause existed to detain Stinson for unlawfully possessing a weapon as a felon, thus defeating Stinson's unlawful detention claim as a matter of law. *Id.* at 368. Probable cause is an objective inquiry, based on what a reasonable officer could conclude from information known to officers at the scene, and exists when a reasonable officer would, under the circumstances, believe that the suspect has committed a crime. *Esco*, 107 F.4th at 676–77.

5

Stinson has sufficiently pleaded that no probable cause existed to support his detention at the time of his arrest or after. In Stinson's version of events—which the Court must accept as true for the purpose of the motion to dismiss—he saw police arrive outside a house near where he was located; the house was located in a high-crime area; upon seeing the police, Stinson raised his hands above his head and walked into the house's backyard through a gate; and he then fled from a person in "street clothes" who came through the same gate and pointed a handgun at him. [92] at ¶¶ 7–12, 14. In his version of events, Stinson did not possess a firearm, hold his waistband, crouch by the grill where the gun was found, or do anything else that might have given police reason to suspect he possessed a firearm at the time of his arrest. *Id.* ¶ 24–34. Indeed, Stinson expressly alleges that contrary arrest report and grand jury testimony were false. *Id.*

In context, "unprovoked flight upon noticing the police" might provide justification for a *Terry* stop (i.e., a brief detention for investigative purposes justifiable by reasonable suspicion). *See Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000). But as alleged, Stinson's flight does not validate his detention. In *United States v. Wilson*, the Seventh Circuit concluded that officers had reasonable suspicion to believe that an individual was engaged in criminal activity, and therefore subject to a *Terry* stop, where the totality of circumstances included not just "unprovoked, headlong flight from police," but also where the individual "had a conspicuous bulge in his right pocket" and "act[ed] evasively" by "grabbing the bulge, turning his right side away from [the officers'] view, and sitting facing away from them." 963 F.3d 701,

6

703–04 (7th Cir. 2020). What is more, in *Wilson*, officers "knew they were in a high-crime area and had received a dispatch report minutes earlier of armed men selling drugs nearby." *Id.* It was the totality of all those circumstances that provided law enforcement with reasonable suspicion. *See also United States v. Richmond*, 924 F.3d 404, 411–14 (7th Cir. 2019) (reasonable suspicion for *Terry* stop supplied by defendant's evasive behavior upon seeing police in a high-crime area and gun-like bulge spotted in his pocket by officers).

Certainly, *Wilson* and *Richmond* do not require all the aforementioned circumstances before officers can seize an individual. Yet *Wilson* and *Richmond* help illustrate the gulf between the facts in those cases and the facts plead here. As alleged, while in a high-crime area, Stinson fled from an armed person "in street clothes" who did not identify herself as a police officer. In this narrative, there is no flight from law enforcement. There is no gun-like bulge. There is no otherwise evasive behavior. There is no report of armed men in the area. Judging by *Wilson* and *Richmond*, Stinson's version of events would not supply reasonable suspicion, let alone probable cause. *See Wardlow*, 528 U.S. at 123 (explaining that reasonable suspicion is "a less demanding standard" than probable cause); *see also United States v. Cherry*, 920 F.3d 1126, 1136 at n. 3 (7th Cir. 2019) ("flight cannot, on its own, provide probable cause to arrest").

Separate from the question of whether the defendant officers had probable cause to believe that Stinson possessed a firearm is the question of whether the defendant officers had probable cause to believe any possession by Stinson of a

7

firearm was unlawful *because he was a felon*. Stinson's third amended complaint includes no reference (positive or negative) to his criminal history or what the officers may have known about it. From this factual void, defendants appear to argue that because Stinson "does not plead that he had *not* been convicted of [a] predicate felony at the time of his arrest," Stinson has conceded that the defendant officers had probable cause to believe he was a felon at the time they arrested him. [95] at 6 (emphasis added). The Court does not credit defendants' argument. It will not draw such a negative inference against Stinson based solely on silence.

Defendants separately argue that they had probable cause to arrest Stinson for obstructing a peace officer because Stinson has *expressly* admitted that he fled and has *implicitly* conceded that he heard officers commanding him to stop. [102] at 3–4. But Stinson's complaint—which, again, is the only factual source the Court credits at this time—makes no allegations, either way, about what commands, if any, were issued to Stinson. At this stage in the proceedings, therefore, the Court cannot credit defendants' alternative basis for asserting that probable cause existed to detain Stinson. Because Stinson has adequately alleged that no probable cause existed to detain him, he has stated a claim for unlawful detention.

## B. Malicious Prosecution (Counts I & V)

Stinson also brings malicious prosecution claims under both the Fourth Amendment of the United States Constitution and under Illinois law.[1] As relevant

---

[1] Defendants contend that Stinson's federal claim of malicious prosecution (Count I) is duplicative of his federal claim of unlawful detention (Count II), because "both counts allege that Defendants unlawfully and without probable cause detained Plaintiff causing him

here, the Illinois tort of malicious prosecution has five elements: (1) the defendants'
commencement of a criminal proceeding against the plaintiff; (2) the favorable
termination of that proceeding for the plaintiff; (3) an absence of probable cause for
the proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.
*Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). Defendants do not dispute that Stinson
has alleged damages from his arrest and time in custody, but rather focus on the first
four elements. [95] at 10.

Regarding the Fourth Amendment claim of malicious prosecution, the parties
rely on *Thompson v. Clark*, where the Supreme Court recently confirmed that a
Fourth Amendment malicious prosecution claim shares at least the second and third
elements of the Illinois tort, and that common-law malicious prosecution, in which
the Fourth Amendment claim is rooted, requires nothing that Illinois law does not.
596 U.S. 36, 43–44 (2022). So the Court assumes that if Stinson satisfies the elements
of state-law malicious prosecution, he satisfies the elements of the Fourth
Amendment claim as well.

### 1. *Initiation of the Prosecution*

Defendants argue that Stinson has not adequately alleged whether the
personal involvement of particular individual defendants in initiating or continuing
his prosecution "was significant" and thus has not met the first element of the state-
law tort. [95] at 12 (citing *Beaman v. Freesmeyer*, 2019 IL App (4th) 160527, ¶ 85).

---

injuries." [95] at 9. But these claims have distinct elements—Stinson could have been
prosecuted without being detained, or vice versa—and defendants cite no authority
indicating these specific constitutional harms are duplicative.

But as the Illinois Supreme Court has explained, "the relevant inquiry is whether the officer proximately caused the commencement or continuance of the criminal proceeding." *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 79.

Here, Stinson alleges that Altenbach's false statements in the arrest report and before the grand jury were "a product of discussion between [Altenbach] and one or more of the other defendants," and that this caused Stinson to be charged and prosecuted with the state firearm offense. [92] ¶¶ 29, 35. The Court can reasonably infer that Stinson's prosecution was based at least in part on that arrest report and grand jury testimony, so the defendant officers' actions were a proximate cause of the ongoing prosecution. At this early stage, this is enough to satisfy this element.

2.    *Favorable Termination*

Defendants next argue that Stinson's bench-trial acquittal does not satisfy the "favorable termination" requirement, *see Swick*, 169 Ill. 2d at 512, because it was "not in a manner indicative of his innocence." [95] at 11. Specifically, defendants point to the transcript where the judge presiding over the criminal case stated: "I think more likely than not, finding a firearm in a barbeque grill is evidence of someone who was recently in a hurry putting it in there, and that someone certainly points to Mr. Stinson" and that "while I think it was your gun Mr. Stinson, I find the state has not met their burden of proof." *Id.* at 11–12; *see also* [95-8] at 39–40.

But defendants cite no authority indicating that a judge's nonessential comments are relevant to determining if a termination was favorable, and the Seventh Circuit has said that "an acquittal is clearly sufficient to show favorable

10

termination" for Illinois malicious prosecution. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 926 (7th Cir. 2001). Likewise, the Supreme Court has recently made clear that "to demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson*, 596 U.S. at 39.

Stinson's bench-trial acquittal is thus sufficient to satisfy the favorable termination requirement for both the state-law and Fourth Amendment malicious prosecution claims.

### 3. *Probable Cause*

As discussed above, Stinson's operative complaint, taken as true, adequately alleges that the officers lacked probable cause to arrest or detain him for any crime. Indeed, Stinson's core allegation is that the defendant officers conspired to present knowingly false testimony to justify his arrest retroactively. Stinson has thus alleged that there was no probable cause to prosecute him for any crime.

### 4. *Malice*

Defendants argue that Stinson has not sufficiently alleged that defendants acted with the malice required by Illinois law. [95] at 10–11. But Stinson has adequately alleged that his prosecution occurred without probable cause, and the parties agree that under Illinois law "[m]alice may be inferred from want of probable cause when the circumstances are inconsistent with good faith by the prosecutor and where the want of probable cause has been clearly proved." *Aguirre v. City of Chicago*,

11

382 Ill. App. (5th) 3d 89, 97 (2008) (cleaned up). Taking Stinson's allegations as true, there is no good-faith reason for prosecuting Stinson in the absence of probable cause. He has therefore adequately alleged malice under Illinois law.[2]

\* \* \*

Stinson has thus adequately pleaded all the elements of both Fourth Amendment and Illinois malicious prosecution and has therefore stated claims for both counts.

### C.    Failure To Intervene (Count IV)

Defendants contend that Stinson's allegations that the officer defendants failed to intervene are conclusory and lack sufficient specificity. [95] at 13–14. A claim of failure to intervene requires that the officers in question "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Defendants argue that Stinson has merely recited the elements of the claim and has not identified the constitutional right that was violated. [95] at 14. The Court disagrees with defendants' reading of Stinson's complaint.

As already discussed, Stinson has adequately alleged that his rights under the Fourth Amendment were violated when he was detained and prosecuted without

---

[2] In *Thompson*, the Supreme Court left open the question of whether a Fourth Amendment malicious prosecution claim under § 1983 "must establish malice (or some other mens rea) in addition to the absence of probable cause." 596 U.S. at 44 n.3. But the Illinois malice requirement is substantially similar to the malice requirement of the common-law tort, *id.* at 44, and (based on the arguments with which it has been presented), the Court sees no reason why even if malice were a requirement for the federal claim, it could not be reasonably inferred from the facts Stinson alleges.

probable cause. The Court can reasonably infer that these are the constitutional violations that were committed. Further, Stinson has alleged that no officer saw evidence that he possessed a firearm, that Altenbach's statements to the contrary in the arrest report and his grand jury testimony were false, and that these false statements were "a product of discussions between [Altenbach] and one or more of the other defendants in order to justify the arrest, detention, and prosecution of Anton without probable cause." [92] ¶¶ 25–34. From these allegations, it is reasonable to infer that the officers participating in a discussion of constitutional violations were both aware of the violations and had an opportunity to prevent them: for example, by filing a corrected (and purportedly accurate) report or by informing supervisors or prosecutors about the false statements.

Stinson has thus stated a claim that the defendant officers failed to intervene.

### D.    Conspiracy (Counts III & VI)

Defendants also allege that Stinson's complaint fails to state a claim for civil conspiracy under either federal or Illinois law. [95] at 14–17. Federal civil conspiracy under § 1983 requires that a plaintiff "show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018). For Illinois civil conspiracy, Stinson "must allege (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act caused by one of the parties; and (4) the overt act was done

13

pursuant to and in furtherance of a common scheme." *Clarage v. Kuzma*, 342 Ill. App. 3d 573, 583 (3d Dist. 2003).

Stinson has adequately alleged several underlying constitutional harms— unlawful detention, malicious prosecution, and failure to intervene. And the operative complaint alleges that the individual defendants inflicted those harms by reaching an agreement to "frame [Stinson] for a crime he did not commit" and "provide false justification for [his] unlawful arrest, charging, and prosecution." [92] ¶¶ 29, 49. Defendants do not dispute that an agreement by police officers to unlawfully detain and maliciously prosecute someone who they knew they had no reason to suspect committed a crime would satisfy the elements of both federal and Illinois civil conspiracy. Instead, defendants argue that Stinson's federal and state conspiracy claims are not actionable as pleaded because "there are no specific dates, no 'overt acts,' and no indication of who was specifically involved." [95] at 16–17. The Court again disagrees with this miserly reading of the complaint.

With respect to "overt acts" and the particular players involved, Stinson alleged that the defendant officers agreed among themselves to arrest and prosecute him without probable cause and that Altenbach lied in the report and before the grand jury to justify prosecuting Stinson. [92] ¶ 29. Although Altenbach is the only one alleged to have actually made the false statements, it is reasonable to infer from the pleaded facts that the other officers involved in Stinson's arrest participated in, or at least facilitated, those statements.

And while Stinson does not allege "specific dates," he does not need to for his federal conspiracy claim. At this point, he need only allege "the approximate date of the conspiracy" because "[t]he dates on which particular defendants joined the conspiracy are . . . not the kind of information that a plaintiff can be expected to have when she files her complaint." *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023). Stinson has done this: the Court can reasonably infer from Stinson's complaint that the alleged discussions between Altenbach and the other named defendants occurred sometime between Stinson's arrest on July 9, 2019, and Altenbach's grand jury testimony on July 26, 2019, a period of just 17 days. [92] ¶ 7, 24, 29. Lastly, defendants do not cite any authority indicating why this timeline be insufficiently specific under either federal or Illinois law.

Stinson has thus stated claims of civil conspiracy under both federal and Illinois law.

### E.    Indemnification (Count VII)

Stinson seeks indemnity by the City. Defendants argue the indemnity claim must fail if the claims against the individual defendants fail. [95] at 20; *see* 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Because Stinson's other claims survive, so does this one.

## IV.    Conclusion

Defendants' motion to dismiss [95] is denied.  The parties are directed to file a joint status report on or before October 24, 2024, with a proposed discovery plan or recommending other next steps in this matter. If a settlement conference would be helpful, the parties should let the Court know so that it may enter the appropriate referral.

ENTER:   10/10/24

Georgia N. Alexakis
United States District Judge